IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



THE TRAVELERS INDEMNITY
COMPANY OF CONNECTICUT,

    Plaintiff,

v.       Civil No. 2:12cv156

STERLING WHOLESALE, LLC, et al.,

    Defendants.

## OPINION AND ORDER

This is a declaratory judgment action. The Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. § 1332 based upon complete diversity of citizenship between the parties and an amount in controversy in excess of $75,000. In this action, plaintiff Travelers Indemnity Company of Connecticut ("Travelers") seeks a declaration by the Court that, under commercial general liability policies it issued to defendant Sterling Wholesale, LLC ("Sterling Wholesale"), it has no duty to defend or indemnify Sterling Wholesale or its president, Jeffrey B. Littman, with respect to certain litigation in a New York federal district court, contending that the complaint in the underlying litigation does not allege an "advertising injury" that would trigger coverage under the policies issued by Travelers to Sterling Wholesale.

This matter is now before the Court on the cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth herein, the plaintiff's motion (ECF No. 33) is **DENIED**, the defendants' motion (ECF No. 34) is **GRANTED**, and judgment will be entered in favor of the defendants.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Sterling Wholesale is a small import/export company headquartered in Chesapeake, Virginia,

which supplies a wide variety of products to manufacturers, importers, and distributors worldwide, including over-the-counter medical supplies such as blood glucose monitoring strips. Mr. Littman is Sterling Wholesale's president. Travelers is a property and casualty insurer that issued commercial general liability policies to Sterling Wholesale, providing coverage for three successive one-year policy periods between July 19, 2005, and July 19, 2008.

On March 23, 2012, Travelers filed the complaint in this action, seeking a declaration that it had no obligation under the liability policies it had issued to defend or indemnify Sterling Wholesale or Littman for the claims raised in the underlying litigation. Travelers did so on the ground that the underlying complaint failed to allege a covered "advertising injury." The defendants filed their answer to the complaint on July 20, 2012, requesting a declaration that Travelers owed a duty to defend and indemnify Sterling Wholesale and Littman in connection with the underlying litigation.

On December 26, 2012, the parties filed cross-motions for summary judgment with respect to the duty to defend issue, pursuant to Rule 56 of the Federal Rules of Civil Procedure. On January 14, 2013, each side filed a brief in opposition to the other's motion. On January 22, 2013, each side filed its reply brief. A hearing on these motions was held on January 29, 2013.

**A. The Underlying Complaint**

This coverage action concerns the defendants' claim to liability coverage with respect to an underlying lawsuit styled Johnson & Johnson and LifeScan, Inc. v. South Pointe Wholesale, Inc., et al. ("LifeScan"), Case No. 1:08-cv-01297, filed in the United States District Court for the Eastern District of New York on March 31, 2008, by Johnson & Johnson and its subsidiary, LifeScan, Inc., against 83 defendants, including Sterling Wholesale and Littman. The underlying lawsuit alleges a scheme involving a number of co-conspirators who acquired genuine OneTouch blood glucose test strips manufactured by LifeScan for sale in foreign markets, removed the original foreign-language

labels, repackaged the products with English-language labels bearing counterfeit lot numbers and expiration dates, and then imported them into the United States for distribution and sale at U.S. retail pharmacies. Sterling Wholesale and Littman are not among the defendants named as active co-conspirators in the production of the counterfeit or repackaged test strips, but the LifeScan complaint describes Sterling Wholesale's role as that of a financial middleman, partnering with another distributor to import the allegedly counterfeit test strips from South Africa and deliver them to domestic wholesale distributors. There is no express allegation in the LifeScan complaint that Sterling Wholesale or Littman knew that the test strips at issue were repackaged or otherwise counterfeit. The LifeScan complaint assets nine causes of action against Sterling Wholesale and Littman: (1) federal trademark infringement; (2) federal trademark counterfeiting; (3) federal false description and false designation of origin; (4) federal false advertising; (5) federal trademark dilution; (6) New York dilution of mark and injury to business reputation; (7) New York deceptive business practices; (8) common law unfair competition; and (9) common law unjust enrichment.

Sterling Wholesale and Littman were not named in the original LifeScan complaint. They were first added as defendants in the Sixth Amended Complaint filed in the LifeScan lawsuit, filed on May 12, 2009. This underlying complaint is 116 pages long, including 676 separately numbered paragraphs, and asserting nine causes of action against 83 defendants. The Fourth Cause of Action, asserted against all defendants in the LifeScan litigation, is a claim seeking damages for false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). The paragraphs that expressly address Sterling Wholesale and Littman are set forth herein, in their entirety:

> 40. Sterling Wholesale is a corporation organized under the laws of the State of Virginia with a business address at 3572 Argonne Avenue, Norfolk, Virginia 23509. Sterling Wholesale conspired with MC Distributors to purchase counterfeit boxes of OneTouch test strips from Rowan Tree and

sold the counterfeit boxes of OneTouch test strips to QK Healthcare, which is located in the Eastern District of New York, and others. Personal jurisdiction is proper over Sterling Wholesale pursuant to N.Y.C.P.L. § 302.

41. Jeffrey B. Littman has a business address at 3572 Argonne Avenue, Norfolk, Virginia 23509. Littman is one of the moving, active and conscious forces behind Sterling Wholesale.

. . . .

107. Initially, Gymtrade, and then Rowan Tree, sold the counterfeit boxes of LifeScan test strips directly in the United States to Novex, National Distribution, MC Distributors, Sterling Wholesale,[1] and H&H Wholesale.

. . . .

198. In addition to making sales to Gymtrade's customers, Rowan Tree sold counterfeit boxes of LifeScan test strips to a new U.S. customer: Sterling Wholesale.

199. Sterling Wholesale purchased LifeScan test strips from Rowan Tree on behalf of another U.S. distributor, MC Distributors.

200. Upon information and belief, MC Distributors did not have experience importing products from South Africa and was leery of wiring hundreds of thousands of dollars to South Africa without verification that the products it was buying actually existed. Accordingly, MC Distributors formed a partnership with Sterling Wholesale which, upon information and belief, had experience buying products from South Africa.

201. Upon information and belief, Sterling Wholesale had a business relationship with Nexxus Corporation ("Nexxus"), a company located in South Africa, which verified the delivery of products by Rowan Tree to the freight forwarder in South Africa.

202. Upon information and belief, Nexxus received at lest $0.15 per box of test strips it inspected.

203. Upon information and belief, after verification from Nexxus that Rowan Tree had delivered product, Sterling Wholesale wired money to Rowan Tree's bank account at the Absa Bank.

204. Upon information and belief, Sterling Wholesale negotiated the purchase price and quantity for the test strips directly with Rowan Tree.

---

[1] From the context, it appears that this early reference to Sterling Wholesale in paragraph 107 is mistaken, naming Sterling Wholesale instead of a similarly named but apparently unrelated LifeScan defendant, Sterling Distributors.

> 205. MC Distributors and Sterling Wholesale, however, evenly divided the freight costs and Nexxus' fee.
>
> 206. Over the course of 8 months, Sterling Wholesale, together with MC Distributors, purchased at least 21,312 counterfeit boxes of LifeScan test strips from Rowan Tree. Upon information and belief, MC Distributors then sold these counterfeit boxes to, among others, QK Healthcare, Five Mountain, Pharmacy Wholesale Services and Sterling Distributors.
>
> 207. In or around October 2005, Eric Chirinsky of MC Distributors contact Mr. Swart, who at the time used the alias "Derek Smith," to negotiate purchases of the LifeScan test strips without Sterling Wholesale's involvement.
>
> . . . .
>
> 230. Upon information and belief, after leaving Florida [during a trip to the United States in the spring of 2006], Mr. Swart traveled to Virginia where he met with Jeffrey Littman of Sterling Wholesale.

The Fourth Cause of Action asserted in the LifeScan complaint raises a federal false advertising claim against all defendants, including Sterling Wholesale and Littman, stating in its entirety:

> 657. Plaintiffs repeat and reallege paragraphs 1–650 as if fully set forth herein.
>
> 658. In violation of 15 U.S.C. § 1125(a)(1)(B), the defendants, independently and in conspiracy with one another, in connection with the sale of the counterfeit LifeScan products, used a slogan, trade dress, word, term, name, symbol, or device or any combination thereof, or a false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which, in commercial advertising or promotion, misrepresents the nature, characteristics, and qualities of the counterfeit LifeScan products.

In their request for relief, the LifeScan plaintiffs seek injunctive relief, unspecified damages, costs, and attorney fees from all of the LifeScan defendants, generally.

**B. The Insurance Policies**

Three successive one-year commercial general liability policies are at issue in this case, but the pertinent provisions of each policy are identical. Each of the policies contains a "Web Xtend

Liability Endorsement," which sets forth the operative policy language of coverage B with respect to personal injury, advertising injury, and web site injury liability. The Coverage B insuring agreement, set forth in the endorsement, provides as follows:

> 1. INSURING AGREEMENT
>
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "advertising injury" . . . to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for . . . "advertising injury" . . . to which this insurance does not apply. . . .
>
>    b. This insurance applies to: . . .
>
>       (2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services . . . .

The endorsement further provides the following definition of "advertising injury":

> 1. "Advertising injury" means injury, arising out of one or more of the following offenses:
>
>    a. Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services . . . ;
>
>    b. Oral, written or electronic publication of material that appropriates a person's likeness, unreasonably places a person in a false light or gives unreasonable publicity to a person's private life; or
>
>    c. Infringement of copyright, title or slogan . . . .

The parties' dispute centers on whether the LifeScan complaint alleges an "advertising injury," as defined by the policies, caused by an offense committed in the course of advertising Sterling Wholesale's goods or products.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." Id. In deciding a summary judgment motion, the Court must view the record as a whole and in the light most favorable to the nonmovant. Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the nonmovant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." Anderson, 477 U.S. at 251-52.

When confronted with cross-motions for summary judgment, "the standards upon which the court evaluates the motions for summary judgment do not change." Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991). "[T]he Court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Philip Morris Inc. v. Harshbarger, 122 F.3d 58, 62 n.4 (1st Cir. 1977)). The mere fact that both sides have moved for summary judgment does not establish that no genuine dispute of material fact exists, thus requiring that judgment be granted to one side or the other. See Worldwide Rights Ltd. P'ship v. Combe Inc., 955 F.2d 242, 244 (4th Cir. 1992); Am. Fid. & Cas. Co. v. London & Edinburgh Ins. Co., 354 F.2d 214, 216 (4th Cir. 1965). Even if the basic facts are not in dispute, the parties may nevertheless disagree as to the inferences that reasonably may be drawn from them, in which case summary

judgment may be inappropriate, necessitating the denial of both motions. See Am. Fid. & Cas. Co., 354 F.2d at 216.

## III. ANALYSIS

The parties agree that the policies were written and delivered in Virginia, and, thus, Virginia law applies to the resolution of this dispute. See Nationwide Mut. Fire Ins. Co. v. Overstreet, 568 F. Supp. 2d 638, 643 n.6 (E.D. Va. 2008).

"Under Virginia law, an insurer's obligation to defend an action 'depends on comparison of the policy language with the underlying complaint to determine whether any claims alleged [in the complaint] are covered by the policy.'" Am. Online, Inc. v. St. Paul Mercury Ins. Co., 347 F.3d 89, 93 (4th Cir. 2003) (quoting Superperformance Int'l, Inc. v. Hartford Cas. Ins. Co., 332 F.3d 215, 220 (4th Cir. 2003)) (alteration in original). This analysis is commonly referred to as the "eight-corners rule"—looking no further than the "four corners" of the applicable insurance policy and the "four corners" of the underlying complaint. Erie Ins. Exch. v. State Farm Mut. Auto. Ins. Co., 60 Va. Cir. 418, 423 (2002). In addition, "[t]he duty to defend is broader than the duty to indemnify because 'it arises whenever the complaint alleges facts and circumstances, some of which, if proved, would fall within the risk covered by the policy.'" Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 636 (4th Cir. 2005) (quoting Brenner v. Lawyers Title Ins. Corp., 397 S.E.2d 100, 102 (Va. 1990)). "Virginia law relieves the insurance company of its duty to defend only if the claims set forth in the complaint against the policyholder clearly allege harm not covered under the policy. 'If coverage is in doubt, the insurance company must defend.'" Premier Pet Prods., LLC v. Travelers Prop. Cas. Co. of Am., 678 F. Supp. 2d 409, 416 (E.D. Va. 2010) (quoting Am. & Foreign Ins. Co. v. Church Sch. in Diocese of Va., 645 F. Supp. 628, 631 (E.D. Va. 1986)); see also Travelers Indem. Co. v. Obenshain, 245 S.E.2d 247, 249 (1978).

Virginia law further provides that "an insurance policy is a contract to be construed in accordance with the principles applicable to all contracts." Seabulk Offshore, Ltd. v. Am. Home Assurance Co., 377 F.3d 408, 419 (4th Cir. 2004) (citing Graphic Arts Mut. Ins. Co. v. C.W. Warthen Co., 397 S.E.2d 876, 877 (Va. 1990)). Accordingly, "[u]nder Virginia law, if policy language is clear and unambiguous, we do not apply rules of construction; rather, we give the language its plain and ordinary meaning and enforce the policy as written." Id. (citing P'ship Umbrella, Inc. v. Fed. Ins. Co., 530 S.E.2d 154, 160 (Va. 2000)). If the Court finds ambiguity "and the intentions of the parties cannot be ascertained, the policy must be construed strictly against the insurer and liberally in favor of the insured." Id. (citing St. Paul Fire & Marine Ins. Co. v. S.L. Nusbaum & Co., 316 S.E.2d 734, 736 (Va. 1984)).

Finally, it is the insured who bears the initial burden of proving coverage under Virginia law. Res. Bankshares, 407 F.3d at 636 (citing Furrow v. State Farm Mut. Ins. Co., 375 S.E.2d 738, 740 (Va. 1989), and Md. Cas. Co. v. Cole, 158 S.E. 873, 876 (Va. 1931)). The insurer has a concomitant burden of proving that an exclusion applies. Bohreer v. Erie Ins. Group, 475 F. Supp. 2d 578, 585 (E.D. Va. 2007) (citing Town Crier Inc. v. Hume, 721 F. Supp. 99, 101 (E.D. Va. 1989), and Johnson v. Ins. Co. of N. Am., 350 S.E.2d 616, 619 (Va. 1986)).

With these principles of Virginia law in mind, the Court turns to the parties' cross-motions for summary judgment.

*   *   *

Other divisions of this Court have previously construed the same or similar policy language in cases involving similar facts. The Richmond Division of this Court considered a policy containing identical language in Premier Pet Products, LLC v. Travelers Property Casualty Co. of America, 678 F. Supp. 2d 409 (E.D. Va. 2010), and the Alexandria Division considered a policy

containing similar language in Solers, Inc v. Hartford Casualty Insurance Co., 146 F. Supp. 2d 785 (E.D. Va. 2001), aff'd, 36 Fed. App'x 740 (4th Cir. 2002). The Supreme Court of Virginia does not appear to have considered, in any published decision, similar policy language or a similar underlying claim. The only reported Virginia state court case on point is a circuit court decision, Northern Virginia Funeral Choices, Inc. v. Erie Insurance Company, 61 Va. Cir. 352 (Fairfax County 2003).

The parties agree that the Court should use a three-part test, previously applied in Premier Pet and Solers, to determine whether the policies covered the claims alleged in the underlying complaint. Under this test, the insurer will owe a duty to defend if:

> (1) [the insured]'s conduct, as alleged in the [underlying lawsuit], constituted one of the offenses enumerated by the Policy giving rise to advertising injury;
> (2) [the insured]'s conduct occurred in the course of advertising its goods, products, or services; and, (3) the advertising activities caused [the underlying tort plaintiff]'s alleged harm.

Premier Pet, 678 F. Supp. 2d at 415 (citing Solers, 146 F. Supp. 2d at 792).

### A. Whether Any of the Enumerated Advertising Offenses Are Alleged

The Court first considers whether the alleged conduct of Sterling Wholesale and Littman falls within the ambit of "infringement of copyright, title or slogan," one of the offenses by the policies giving rise to advertising injury. "The nature of the policyholder's conduct trumps the form of the action pleaded, requiring the insurance company to defend if any allegations _potentially_ state a claim covered by the policy." Premier Pet, 678 F. Supp. 2d at 416. Thus the Court considers not the nominal claims asserted by the plaintiffs in the underlying lawsuit, but the particular acts alleged. See Transcontinental Ins. Co. v. Caliber One Indem. Co., 367 F. Supp. 2d 994, 1004 (E.D. Va. 2005).

The LifeScan complaint alleges that genuine LifeScan blood glucose test strips packaged for sale abroad were removed from their original foreign-language boxes, had their original labels removed and replaced with counterfeit labels, and then were repackaged in counterfeit boxes

modeled on genuine packaging materials taken from LifeScan products purchased at U.S. retail pharmacies. The LifeScan complaint explicitly alleges that the counterfeit packaging includes a variety of registered trademarks owned by Johnson & Johnson, including: JOHNSON & JOHNSON; LIFESCAN; ONETOUCH; ONE TOUCH; ONE TOUCH ULTRA; INDUO; and ULTRASMART. Together with its partner, MC Distributors, Sterling Wholesale is alleged to have purchased at least 21,312 boxes of counterfeit LifeScan test strips from a South African company over an eight-month period in 2005, which MC Distributors then sold to no fewer than four different wholesale distributors for further distribution to retail pharmacies in the United States. The underlying complaint alleges generally that the LifeScan defendants, which include Sterling Wholesale and Littman, "used a slogan, trade dress, word, term, name, symbol, or device . . . in commercial advertising or promotion."

The Court is compelled to conclude that the conduct alleged in the LifeScan complaint falls within the ambit of "infringement of copyright, title or slogan." First, the Court notes that, in the only state court decision on point, a Virginia circuit court considering identical policy language found "the term 'infringement of copyright, title or slogan' [is] broad enough to encompass a claim of trademark infringement." N. Va. Funeral Choices, 61 Va. Cir. at 355.

Second, although the underlying complaint's only detailed description of the packaging at issue is a list of registered trademarks that were depicted on the counterfeit packaging, a trademarked term may in some circumstances also constitute a slogan, the infringement of which may trigger an insurer's duty to defend under a policy affording advertising injury coverage. See Ultra Coachbuilders, Inc. v. Gen. Sec., No. 02 CV 675, 2002 WL 31528474, at *2–*3 (S.D.N.Y. July 15, 2002). The two terms—slogan and trademark—are neither coextensive nor mutually exclusive, and they may sometimes overlap. See Microstrategy Inc. v. Motorola, Inc., 245 F.3d 335, 342 (4th Cir.

2001). It is not clear from the allegations of the underlying LifeScan complaint that the none of the enumerated trademarked terms might also constitute a slogan, for which advertising injury coverage may be available.

Finally, it is clear from the allegations of the underlying complaint that the counterfeit LifeScan packaging at issue was modeled directly on genuine packaging taken from U.S. retail stores, and that it was intended to closely resemble, if not faithfully reproduce, this genuine retail packaging. Notwithstanding the LifeScan complaint's limited description of the contents of the counterfeit packaging, it is reasonable to infer that this counterfeit packaging also included any slogans or copyrighted material that may have been displayed on the genuine article.

Accordingly, the alleged conduct of the LifeScan defendants, including Sterling Wholesale and Littman, potentially constitutes the "infringement of copyright, title or slogan."

### B. Whether the Conduct Alleged Occurred in the Course of Advertising

The insurance policies at issue require that a covered "advertising injury" must arise from an "offense committed in the course of advertising your goods, products or services." Although the policies define "advertising injury," they do not define the term "advertising." Considering identical policy language in both Premier Pet and Solers, this Court has found the term "advertising" to be unambiguous, adopting the term's "natural and ordinary meaning as understood in the business world." Premier Pet, 678 F. Supp. 2d at 419; Solers, 146 F. Supp. 2d at 792–93. In both cases, the Court found the definition of "advertising" to be "the widespread promotion of goods or services to the public at large, or to the company's customer base." Premier Pet, 678 F. Supp. 2d at 419; Solers, 146 F. Supp. 2d at 787, 793.

In Premier Pet, the Court held that the alleged sale of items and misuse of the underlying plaintiff's trademarks, without allegation of any facts concerning advertising or other promotional

activities, did not constitute "advertising," and thus did not allege a covered advertising injury. See Premier Pet, 678 F. Supp. 2d at 419. In Solers, the Court held that submission of a formal written proposal tailored to a single customer constituted the direct solicitation of business, rather than "widespread promotion" of a public nature, and thus was not "advertising." Solers, 146 F. Supp. 2d at 794–96. In so holding, the Court recognized that, "[w]here a promotional communication is addressed to small audience, but that audience nonetheless comprises all or a significant number of the promoter's client base, the advertising activity requirement is met." Id. at 795.

The LifeScan complaint contains no specific allegations of advertising activity by Sterling Wholesale, but it does allege a partnership or joint venture with MC Distributors, continuing over an eight-month period in which Sterling Wholesale contributed its importing expertise and contacts to the joint venture's importation of 21,312 counterfeit boxes of LifeScan test strips for sale to at least four other wholesale distributors. The LifeScan complaint is silent as to the details of any promotional activities that may have occurred with respect to these sales, but it expressly, albeit summarily, alleges that the LifeScan defendants, including Sterling Wholesale and Littman, engaged "in commercial advertising or promotion." Moreover, the LifeScan complaint explicitly alleges that MC Distributors, Sterling Wholesale's partner in this joint venture, sold counterfeit packages of LifeScan test strips to no fewer than four wholesale distributors. There is nothing in the LifeScan complaint to suggest that the sale of more than twenty thousand units of product to multiple customers were obtained exclusively by direct solicitation of these customers, one by one, nor that these several distributors did not constitute a significant portion of the joint venture's customer base.

Accordingly, the alleged conduct of the LifeScan defendants, including Sterling Wholesale and Littman, potentially constitutes an "offense committed in the course of advertising your goods, products or services."

### C. Whether the Alleged Advertising Activity Caused Harm to the LifeScan Plaintiffs

As this Court previously noted in Premier Pet, "in order to establish coverage under an insurance policy, the [insured]'s advertising activities must cause the injury alleged, 'not merely expose it.'" Premier Pet, 678 F. Supp. 2d at 421 (quoting Simply Fresh Fruit, Inc. v. Cont'l Ins. Co., 94 F.3d 1219, 1222–23 (9th Cir. 1996)). "For example, a claim of patent infringement does not fall within the advertising injury coverage, even though the insured advertises the infringing product, if the claim of infringement is based on the sale or importation of the product rather than its advertisement." Id. (quoting Microtec Research, Inc. v. Nationwide Mut. Ins. Co., 40 F.3d 968, 971 (9th Cir. 1994)) (internal quotation marks omitted). But unlike Premier Pet, the underlying complaint in this case explicitly alleges commercial advertising activity, albeit summarily, and what detailed facts are alleged implicate potential advertising activity by Sterling Wholesale and its partner, MC Distributors, in promoting the sale of more than 20,000 units of counterfeit product to multiple wholesale distributors.

The Court has found that the LifeScan complaint adequately alleges "infringement of copyright, title or slogan" committed in the course of promoting Sterling Wholesale's products to multiple wholesale distributors, and thus logic compels the conclusion that these alleged advertising activities are, at a minimum, the potential cause of injury to the LifeScan plaintiffs with respect to the 21,312 counterfeit boxes of LifeScan test strips sold by Sterling Wholesale and its partner. Moreover, the Court notes that the LifeScan complaint explicitly alleges harm caused by advertising activity inasmuch as it request damages for all claims asserted, including the false advertising claim asserted in Count Four of the LifeScan complaint. Pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a), the LifeScan plaintiffs may be entitled to recover the defendants' profits with respect to these 21,312 boxes, any actual damages sustained by the LifeScan plaintiffs, and litigation

costs if the defendants are found liable for false advertising.

Accordingly, the alleged advertising activities of the LifeScan defendants, including Sterling Wholesale and Littman, potentially caused the LifeScan plaintiff's alleged harm.

* * *

Having determined that (1) the conduct of Sterling Wholesale and Littman, as alleged in the LifeScan complaint, potentially constitutes "infringement of copyright, title or slogan," one of the offenses enumerated by the liability policies at issue giving rise to advertising injury, (2) the alleged conduct of Sterling Wholesale and Littman occurred in the course of advertising Sterling Wholesale's goods, products, or services, and, (3) the alleged advertising activities caused the alleged harm to Johnson & Johnson and Lifescan, Inc., the Court is compelled to conclude that Travelers has a duty to defend Sterling Wholesale and Littman with respect to the LifeScan action.

## IV. CONCLUSION

For the foregoing reasons, the plaintiff's motion for summary judgment (ECF No. 33) is **DENIED**, the defendants' motion for summary judgment (ECF No. 34) is **GRANTED**.

Notwithstanding disposition of the parties' cross-motions for summary judgment, the issue of whether the plaintiff owes a duty to indemnify the defendants remains unresolved. Because a ruling on this coverage issue relies on the outcome of the underlying litigation in New York, and that underlying litigation does not appear to be close to resolution, any remaining claims with respect to the plaintiff's duty to indemnify the defendants are hereby **DISMISSED WITHOUT PREJUDICE**. See Capitol Envtl. Servs., Inc. v. N. River Ins. Co., 778 F. Supp. 2d 623, 627 (E.D. Va. 2011).

The Clerk is **DIRECTED** to enter judgment in favor of the defendants and against the plaintiff with respect to the plaintiff's duty to defend the defendants. Said judgment shall include the

requested declaration that plaintiff Travelers Indemnity Company of Connecticut has a duty under Commercial General Liability Policies Y-630-7838B122-TCT-05, Y-630-7838B122-TCT-06, and Y-630-7838B122-TCT-07 to provide a defense, or costs of defense, to or for defendants Sterling Wholesale, LLC and Jeffrey B. Littman for the claims or causes of action arising out of the facts and allegations that are the subject of the civil action styled <u>Johnson & Johnson and LifeScan, Inc. v. South Pointe Wholesale, Inc., et al.</u>, Case No. 1:08-cv-01297, filed in the United States District Court for the Eastern District of New York on March 31, 2008.

**IT IS SO ORDERED.**

July 19, 2013
Norfolk, Virginia

/s/
Robert G. Doumar
Senior United States District Judge